1

||||||| ||||| |||||| ||||||| ||||| ||||||| |||||| |||| |||||
| ||||||| ||| ||||||| ||||||| ||||| || ||||

**10-CV-05856-CMP**

THE HONORABLE ROBERT J. BRYAN



5

6

# UNITED STATES DISTRICT COURT

7

for the

8

## WESTERN DISTRICT OF WASHINGTON

9

### AT TACOMA

10  JAY L. LAMB                                          )
    and SHARI D. HULTBERG,                               )
11                          Plaintiffs,                  )
                         v.                              )        CASE NO. 3:10-cv-05856 RJB
12                                                       )
    MORTGAGE ELECTRONIC                                  )        [PROPOSED]
13  REGISTRATION SYSTEMS, INC.,                          )        AMENDED VERIFIED
    CHICAGO TITLE INSURANCE                              )        COMPLAINT
14  COMPANY, LSI DIVISION,                               )
    THE BANK OF NEW YORK MELLON                          )
15  TRUST COMPANY, N.A., F/K/A THE                       )
    BANK OF NEW YORK TRUST                               )
16  COMPANY, N.A. AS SUCCESSOR TO                        )
    JP MORGAN CHASE BANK N.A., AS                        )
17  TRUSTEE FOR RAMP 2004RS6,                            )
    GMAC MORTGAGE, LLC                                   )
18                          Defendants,                  )        JURY TRIAL DEMANDED
                                                         )
19  ─────────────────────────────────────────

20  PLAINTIFFS JAY L. LAMB and SHARI D. HULTBERG, proceeding without counsel,

21  hereby serves their Amended Verified Complaint and alleges claims against Defendant

22  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., Defendant CHICAGO

23  TITLE INSURANCE COMPANY, LSI DIVISION, Defendant THE BANK OF NEW

24  YORK MELLON TRUST COMPANY, N.A., F/K/A THE BANK OF NEW YORK TRUST

25  COMPANY, N.A. AS SUCCESSOR TO JP MORGAN CHASE BANK N.A., AS

26

AMENDED VERIFIED COMPLAINT                          Jay Lamb and Shari Hultberg, Plaintiffs
                                                                            PO Box 163
                                                                      Olalla, WA 98359
                                                                       (206) 779-8914

TRUSTEE FOR RAMP 2004RS6 and Defendant GMAC MORTGAGE, LLC, and as grounds states:

## PARTIES AND VENUE

1. PLAINTIFFS JAY L. LAMB and SHARI D. HULTBERG are and were at all times material hereto *sui juris* residents of the State of Washington and over the age of eighteen (18), and the legal owners of the residential property identified hereinbelow as 8625 Orchard Ave SE, Port Orchard, WA 98367 and whose mailing address is PO Box 163, Olalla, WA 98359.

2. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is and was at all times material hereto a Delaware corporation with its principal place of business being located in the Commonwealth of Virginia whose address for service of process is believed to be 1818 Library Street, Suite 300, Reston, Virginia, 20190.

3. Defendant, CHICAGO TITLE INSURANCE COMPANY, LSI DIVISION, (LSI), is and was at all times material hereto a Title company which affirmatively represented to the Plaintiff herein in writing that its address is 1111 Main St., #200, Vancouver, WA, 98660.

4. Defendant, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., F/K/A THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JP MORGAN CHASE BANK N.A., AS TRUSTEE FOR RAMP 2004RS6 (hereinafter "BNYMT") is and was at all times material hereto a National Association whose address is given as 700 South Flower Street, Suite 200, Los Angeles,

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

California, 90017.

5. Defendant GMAC Mortgage, LLC (GMAC) is and was at all times material hereto a Delaware corporation whose address is given as <u>1100 Virginia Dr., Fort Washington, PA, 19034.</u>

6. The residential property the subject of this action (hereafter the "Property") is located at <u>8625 Orchard Ave SE, Port Orchard, WA 98367</u> in Kitsap County, Washington and is legally described as:

> LOT 2 OF LARGE LOT SUBDIVISION NO. 197 RECORDED IN VOLUME 1 OF LARGE LOTS, PAGE 233, UNDER AUDITOR'S FILE NO. 3113952/3, RECORDS OF KITSAP COUNTY, WASHINGTON. SUBJECT TO EASEMENTS, RESTRICTIONS AND RESERVATIONS OF RECORD.

7. Venue is proper in this Court under 28 USC §1391 because the affected subject Property is located in Washington; the Defendants have substantial contacts within Washington;  the substantial events and acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Kitsap County, Washington.

## JURISDICTION

8. This action arises under Federal Question 28 USC §1331 and this Court has Jurisdiction under 15 USC §1640 TILA; 12 USC §2601-2609 RESPA and implementing regulations 24 CFR part 3500; 15 USC §§ 41-58, FTCA and implementing regulations 16 CFR §433.2; 15 USC §1692 FDCPA; 15 USC §1608 FCRA; 31 USC §5311 Banking Secrecy Act/Patriot Act and implementing regulations 31 CFR §103.11; 5 USC § 552, The Privacy Act; 12 USC §5301 Dodd-Frank Wall Street Reform and Consumer Protection Act (P.L. 111-203); 26 USC §

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

856, §2039, §2041, §2514b and other provisions of the U.S. Tax Code; 12 USC §1819(b)(2)(A) if FDIC receivership is found to be involved.

9.  This Court has supplemental jurisdiction over any remaining state law claims under 28 USC §1367(a) because the state law claims are so related to the federal claims that they from part of the same case or controversy.

10. This case also arises under the Washington Deed of Trust Act, RCW 61.24 *et. seq* (DTA) and the Washington Consumer Protection Act, RCW 19.86 (CPA), the Commercial Code RCW 62A, the Washington Securities Act, RCW 61.20.

**Material Facts Common to All Counts**

11. The chain of title for the subject Property shows the plaintiff holding undisputed clear legal title and equitable title up until April 21st, 2004, pursuant to the Statutory Warranty Deed recorded in Kitsap County, Washington under Auditor's file number 200404290234 (copy attached).

12. Plaintiffs are the authors of the unregistered/unsecured Note referenced in the common law document entitled "Deed of Trust" recorded in Kitsap County, WA, under Auditor's file no. 200404290235 (copy attached) and Plaintiffs dictated the terms of the unregistered Note and Plaintiffs have personal firsthand knowledge of the said terms.

13. There is no evidence the Plaintiffs' unregistered/unsecured Note and or Deed of Trust was or is registered/secured in the WASHINGTON UCC registry or subject to Uniform Commercial Code which Washington has codified as RCW 62A.

14. Pursuant to Plaintiffs' Affidavits, Plaintiffs deny the Note relied upon by the

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

Defendant(s) is the same Note referenced in the said Deed of Trust.

15. Pursuant to Plaintiffs' Affidavits, Plaintiffs deny the Beneficiary in fact accelerated the Note due date.

16. Pursuant to Plaintiffs' Affidavits, Plaintiffs deny the Beneficiary in fact declared the Plaintiffs in default.

17. Pursuant to Plaintiffs' Affidavits, Plaintiffs dispute the validity of the alleged debt.

18. Pursuant to Plaintiffs' Affidavits, Plaintiffs deny acquiescence to the Defendant(s) non-judicial foreclosure proceedings.

19. On or about May 7, 2009, Defendant(s) slandered title to the subject Property and injured the Plaintiff by recording a Notice of Trustee Sale in the public records of Kitsap County, Washington under Auditor's File No. 200905070209.

20. On or about December 14, 2009 allegedly sold the Plaintiffs' property as evidenced by a Trustee's Deed recorded in Kitsap County, Washington under Auditor's File No. 200912140055.

## CLAIMS FOR RELIEF:

21. The Plaintiffs incorporate all preceding paragraphs in these allegations.

22. Breach of Contract - unanswered QWR: Plaintiffs sent a Qualified Written Request to the Defendant's purported loan servicer and to date Plaintiffs have never received any response and/or received an inadequate response that failed to comply with 12 U.S.C. § 2605(e). Plaintiff disputes that the Defendants are in compliance with RESPA.

23. Equitable Estoppel - invalid debt: Plaintiffs allege that Defendant(s) are in violation of the Fair Debt Collection Practices Act (FDCPA), 15 USC §1692 – 1692p, by

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

failing to verify the alleged debt. Plaintiffs disputed the alleged debt and requested verification of the debt from all claimants who identified themselves as 'debt collectors however Plaintiffs have received no verification of the debt to date. The Defendant is required to cease and desist all collection activities until the verification has been provided which must include discontinuance of the Trustee's Sale until the debt is verified. Plaintiffs allege that Defendant(s) are in violation of the FDCPA.

Secondly, it appears the Defendant(s) are the factor/purchaser and agents of the factor/purchaser of defaulted loans. Therefore the Defendants are subject to the FDCPA. Some of the Defendants failed to offer to validate the debt, never sent a dunning letter, and took non-judicial action to collect the unsecured alleged debt all which violated FDCPA. Others of the Defendants never responded to requests for validation.

24. Erroneous Credit Reporting: Defendant(s) violated the Fair Credit Reporting Act (FCRA), 15 USC § 1608, by permitting or requesting erroneously reporting the alleged debt/obligation on the Plaintiffs' credit reports. Plaintiffs properly disputed this alleged debt to credit reporting companies. To date Plaintiffs have received no validation of the debt but the matter remains on Plaintiffs' credit reports.

25. Foreclosure of Incorrect Note: Pursuant to Plaintiffs' Affidavits, Plaintiffs deny the Defendant(s) are foreclosing under or on the correct Note. Plaintiffs dispute the authenticity of the purported Note relied upon by the Defendants.

26. Forfeiture on Foreclosure: When the original Lender/Beneficiary transferred the Note to a tax exempt REMIC/REIT for tax purposes, a gift or transfer tax would have been

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

incurred if the REMIC/REIT failed make the required election to be treated as tax exempt and/or failed to file a tax return and statement showing the Plaintiffs' property acquired as part of the asset pool. Then latter the REMIC/REIT would have had to make an election to treated the Plaintiffs' property as foreclosure property prior to foreclosing (26 USC §856). If there is a failure of compliance the transaction is prohibited under 26 USC §857(b)(6)(B)(iii) and §1221(a)(1). There is no evidence the required elections, tax returns and statements where ever made/filed. These failures caused Defendant(s) forfeiture on foreclosure and hence the Defendant(s) lack standing to foreclose.

27. Recoupment and Setoff: Pursuant to 15 USC §77b(a)(1); 15 USC § 78c(a)(10); RCW 21.20.005(12)(a); RCW 21.20.310(9) the Plaintiffs' Note is in fact a non-negotiable Security (financial asset). It guarantees Plaintiffs the right of recoupment and setoff pursuant to CFR 16 § 433.2, 15 U.S.C. §1640. It was taken subject to the Plaintiffs' claims and defenses. There is no evidence of the Defendant(s) standing to foreclose non-judicially.

28. False Claim – failed endorsement(s): The Plaintiffs' Note is part of Plaintiffs' non-negotiable Security and does not actually have a holder in due course, per se, but has more of a common law holder for value. Each successor in interest must endorse the Note to transfer the Security as a 'unit'. Failure to endorse it for a transfer will effect the successor's forfeiture on foreclosure and effect the Plaintiffs' right of recoupment. The Note relied upon by the Defendant(s) appears to have missing or incomplete endorsements and therefore Defendant(s) have no standing to foreclose.

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

Page 7 of 12

29. Erroneous Alleged Default: Without knowing who the true beneficiary is, which can only be determined by examining the successive intervening endorsement to the Note, the Defendants have really only an alleged default was declared by a purported beneficiary and thus the Defendants have failed to fully comply with the provisions of the Washington Deed of Trust Act regarding the beneficiary's obligation to declare a default. Plaintiffs dispute the alleged default.

30. Material Violations – Washington Deed of Trust Act. Plaintiffs are unaware of any evidence that the purported Note was ever endorsed or transferred to the Defendant. According to the Assignment of Deed of Trust the alleged beneficiary, PLAZA was replaced with the Defendant, THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION F/K/A THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2004RS6 as successor beneficiary 23 days before the Trustee's Sale occurred. Plaintiff had no knowledge of the assignment and furthermore the assignment was not recorded until 3 days after the Trustee's Sale. This is an unfair business practice because the Plaintiffs could not keep up with what party did, and what party to negotiate with. The entire foreclosure proceeding was material violation of the Deed of Trust Act.

31. Slander of Title – Notice of Trustee's Sale: There is no evidence that the Defendant(s) are/were within the statutory and equitable parameters required when they recorded the Notice of Trustee's Sale which slandered title to the Plaintiff's property and then led to the Plaintiff's complete loss of the property.

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

32. Negligence: There is no evidence that the Defendant(s) are/were within the statutory and equitable parameters required when they recorded the Notice of Trustee's Sale which slandered title to the Plaintiff's property and then led to the Plaintiff's complete loss of the property.

33. Declaratory Relief - MERS: This is an action for declaratory relief which is being brought pursuant to 28 USC § 2201 and FRCR 57 to determine as to whether Defendant MERS has any right under Washington law to act arbitrarily and independent of the actual beneficiary without being named on the Note and/or without any specific authority extended by the beneficiary. There is no clear statute or decision that Washington law permits MERS to serve as beneficiary. The following rulings favor the borrower over MERS: *Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 301 S.W.3d 1 (Ark. 2009); *In re Agard,* No. 810-77338-reg (E.D.N.Y.) Bankr. Feb. 10, 2011); *Hooker v. Northwest Trustee Services, Inc., Case No. 1:10-cv-03111-PA USDC for District of Oregon (Order of 5/25/2011);* See also Christopher L. Petersen, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* 78 U. Cin. L. Rev. 1359 (2010).

34. Injunctive Relief: This is an action for injunctive relief which is brought upon proper legal and equitable grounds. Pursuant to RCW 61.24.130, injunctive relief may be based on "material violations" of the RCW 61.24 *et. seq.* and is not strictly limited to "irreparable harm". Plaintiffs have no remedy to redress the harm caused by the purposed Trustee's Sale because the injuring party is believed to be statutorily/civilly dead/bankrupt. Plaintiffs are entitled to a temporary restraining order and a

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

preliminary injunction until this matter is decided and likely preserved with a permanent injunction against the Defendants.

**WHEREFORE,** the Plaintiffs pray for judgment to be entered jointly and severally herein against all Defendants as follows:

(a) For a Rescission of Trustee's Deed or payment of monetary damages in the amount of $292,431.00 plus other related costs and fees for this action and for relocation.

(b) For a judgment pursuant to the provisions of the Fair Debt Collection Practices Act and Fair Credit Reporting Act for each violation and for punitive damages plus per diem adjustments and possibly Private Attorney General fees as prescribed by law to be determined at trial; *Graziano v. Harrison*, 950 F.2d 107, 113 (3d. Cir. 1991), 15 U.S.C. § 1692(a)(3), (see *Zagorski v. Midwest Services, Inc.* F.3d – (1997 WL 695401, 7th Cir.) or 128 F.3d 1164 (7th Cir. 1997);

(c) For actual and statutory damages in whatever amount this Court shall find appropriate to compensate the Plaintiff for the losses they have suffered;

(d) All statutory damages to which the Plaintiffs are entitled under Fair Debt Collection Practices Act, Fair Credit Reporting Act, Washington Consumer Protection Act, Usury Statute, TILA, RESPA, and any other applicable laws;

(e) Plaintiffs demand a declaratory judgment as to MERS arbitrary and independent acts as a nominal beneficiary under the subject Deed of Trust;

(f) Plaintiffs demand a temporary restraining order and preliminary injunction;

(g) For actual damages, costs and fees associated with this claim;

(h) For any other remedies and compensations this court deems appropriate.

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

1 | Respectfully submitted this 21st day of July, 2011,

2 | <u>VERIFICATION</u>

3 | We, the under signed Plaintiffs, do affirm the foregoing Amended Verified Complaint, the
4 |
5 | allegations therein, the pleading and contents to be true, correct, complete, to the best of my
6 | knowledge, information and belief.

7 |

8 | Plaintiff: JAY L. LAMB
9 | Signature: _____
10 | Plaintiff: SHARI D. HULTBERG
11 |
12 | Signature: _____
13 | <u>JURAT</u>

14 | I Melissa D Wagner _____ a Notary Public certify that I know or
15 | have satisfactory evidence that JAY L. LAMB and  SHARI D. HULTBERG appeared before
16 | me, and signed this Amended Verified Complaint and acknowledged it to be free and
17 |
18 | voluntary act for the uses and purposes mentioned in the instrument.
19 | I certify under PENALTY OF PERJURY under the laws of the State of Washington, County
20 | of _____Pierce_____ that the foregoing paragraph is true and correct.

21 |

22 | DATED: _July 21st 2011_
23 | Notary Public UM8Sa D L
24 |
25 | My appointment expires _3-16-14_
26 |

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

1

EXHIBITS ATTACHED

2

Exhibit **A** – Statutory Warranty Deed (200404290234)

3

4

Exhibit **B** – Deed of Trust (200404290235)

5

Exhibit **C** – Appointment of Successor Trustee (200904010085)

6

7

Exhibit **D** – Assignment of Deed of Trust (200911230099)

8

Exhibit **E** – Notice of Trustee Sale (200905070209)

9

10

Exhibit **F** – Trustee's Deed (200912140055)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMENDED VERIFIED COMPLAINT

Jay Lamb and Shari Hultberg, Plaintiffs
PO Box 163
Olalla, WA 98359
(206) 779-8914

# EXHIBIT "A" ATTACHED

# (HEREUNDER)

AFTER RECORDING MAIL TO:
Jay L. Lamb and Shari D. Hultberg
18506 67th Avenue NE
Lynnwood, WA 98037

||||||||||||||||||||||||||||||||||||  200404290234
                                       Page:   1 of 2
                                       04/29/2004  02:19P
LAND TITLE CO          DEED   $20.00 Kitsap Co, WA

KITSAP COUNTY TREASURER EXCISE      04/29/2004

Filed for Record at Request of     2004EX03760
Puget Sound Mortgage & Escrow       Total : $5553.80      Clerk's Initial
Escrow Number: P50302MR

E168402  ⸘  **Statutory Warranty Deed**

Grantor(s): Stanchion Homes, Inc.
Grantee(s): Jay L. Lamb and Shari D. Hultberg
Abbreviated Legal

Assessor's Tax Parcel Number(s): 212302-1-037-2007

THE GRANTOR Stanchion Homes, Inc., a Washington Corporation for and in consideration
of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and
warrants to Jay L. Lamb, an unmarried man, Shari D. Hultberg, an unmarried woman
the following described real estate, situated in the County of Kitsap, State of Washington.

LOT 2, LARGE LOT SUBDIVISION NO. 197, RECORDED IN VOLUME 1 OF LARGE LOTS, PAGE
233, UNDER AUDITOR'S FILE NOS. 3113952 AND 3113953, BEING A PORTION OF THE SOUTH
HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 21,
TOWNSHIP 23 NORTH, RANGE 2 EAST, W.M., IN KITSAP COUNTY, WASHINGTON;
EXCEPT ORCHARD AVENUE, COUNTY ROAD.

SUBJECT TO SPECIAL EXCEPTIONS ATTACHED HERETO MARKED EXHIBIT "A" AND BY THIS
REFERENCE MADE A PART HEREOF

Dated  April 21, 2004

Stanchion Homes, Inc., a Washington corporaiton

By: _Robert Mishko_
    Robert Mishko, Secretary

STATE OF    Washington      }
County of    Kitsap         } SS:

I certify that I know or have satisfactory evidence that   Robert Mishko
                                      is/are  the person(s)    who appeared before
me, and said person(s)   acknowledged that  he    signed this instrument, on oath stated  he
is/are authorized to execute the instrument and acknowledge it as the    Secretary
                                      of  Stanchion Homes, Inc.
to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated:  April 26  2004              _Meg Reeves_
                                    Meg Reeves
                                    Notary Public in and for the State of  Washington
                                    Residing at  Poulsbo
                                    My appointment expires:  10/25/2006

MEG REEVES
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
OCTOBER 25, 2006

LPB-10

EXHIBIT "A"

SPECIAL EXCEPTIONS:

1.  A buffer or a defined open space area as disclosed by Large Lot No.
    197 filed under Auditor's File No. 3113952;
    Affects:            25 feet and 50 feet

2.  Covenants, conditions and restrictions contained in the following
    instrument, but omitting any covenant, condition or restriction
    based on race, color, religion, sex, handicap, familial status, or
    national origin unless and only to the extent that said covenant
    (a) is exempt under Chapter 42, Section 3607 of the United States
    Code or (b) relates to handicap but does not discriminate against
    handicapped person;
    Recorded:            August 28, 1998
    Recording No.:       3113952 and 3113953

    (Affects portions of said premises)

3.  Notice for Maintenance and Monitoring Requirement pursuant to
    Bremerton-Kitsap County Health District ordinance and the terms and
    conditions thereof;
    Recorded:            June 25, 2003
    Auditor's File No.:  200306250407



200404290234
Page:    2 of 2
04/29/2004   02:19P
LAND TITLE CO          DEED   $28.00 Kitsap Co, WA

# EXHIBIT "B" ATTACHED

# (HEREUNDER)

200404290235
Page: 1 of 20
04/29/2004  02:10P
LAND TITLE CO        DT    $39.00  Kitsap Co, WA

Return To:

**PLAZA HOME MORTGAGE, INC.**

5090 SHOREHAM PLACE #109
SAN DIEGO, CA 92122

Assessor's Parcel or Account Number: 21230210372007
Abbreviated Legal Description: **Quarter:  SW, NE  Section 21, Township 23N, Range 2E**

Include lot, block and plat or section, township and range]        Full legal description located on page 3.

Trustee: **LAND TITLE COMPANY OF KITSAP COUNTY**

Additional Grantees located on page 2.
————————————————————[Space Above This Line For Recording Data]————————————————————

F 168402    2

# DEED OF TRUST

LOAN NO.:  09403213

MIN   100109800000009549
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          **APRIL 23, 2004**                   ,
together with all Riders to this document.

(B) "Borrower" is

**JAY L. LAMB, AN UNMARRIED MAN, AND SHARI D. HULTBERG, AN UNMARRIED WOMAN, EACH AS THEIR
SEPARATE ESTATE**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is
**PLAZA HOME MORTGAGE, INC.**

WASHINGTON-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3048  1/01
VMP-6A(WA)  (0012)                                                  Page 1 of 15          LENDER SUPPORT SYSTEMS, INC. MERS6AWA.NEW (06/03)

AUDITOR'S NOTE
LEGIBILITY FOR RECORDING AND COPYING
UNSATISFACTORY IN A PORTION OF THIS
INSTRUMENT WHEN RECEIVED.

Unofficial Copy

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**
Lender's address is
**5090 SHOREHAM PLACE #109, SAN DIEGO, CA 92122**
(D) **"Trustee"** is
**LAND TITLE COMPANY OF KITSAP COUNTY**
(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated         APRIL 23, 2004         .
The Note states that Borrower owes Lender
**TWO HUNDRED FORTY NINE THOUSAND SIX HUNDRED AND NO/100 X X X X X X X X X X X X X X X X**
                                                                                                            Dollars
(U.S. $ 249,600.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    MAY 01, 2034.
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) **"RIDERS"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider        [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] Graduated Payment Rider     [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
[ ] Balloon Rider               [ ] Rate Improvement Rider          [ ] Second Home Rider
[ ] Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

VMP-6A(WA) (0012)                     Page 2 of 15                        Form 3048  1/01

200404290235
Page:  2 of 20
04/29/2004  02:18P
LAND TITLE CO      DT    $39.00  Kitsap Co, WA

Case 3:10-cv-05856-RJB   Document 30   Filed 07/21/11   Page 19 of 48


**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (.i) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          COUNTY       [Type of Recording Jurisdiction]
of       KITSAP         [Name of Recording Jurisdiction] :

**SECTION 21, TOWNSHIP 23 NORTH, RANGE 2 EAST**

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. ......AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**



Parcel ID Number:  21230210372007            which currently has the address of
         8826 ORCHARD AVENUE SOUTHEAST          [Street]
       PORT ORCHARD         [City] , Washington    98367-    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(WA) (0C)                               Form 3048  1/01



200404290235
Page:  3 of 20
04/29/2004  02:18P
LAND TITLE CO       DT    $39.00 Kitsap Co, WA

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

200404290235
Page: 4 of 20
04/29/2004 02:10P
LAND TITLE CO    DT   $39.00  Kitsap Co, WA

Form 3048  1/01

Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



200404290235
Page:   5 of 20
04/29/2004  02:18P
LAND TITLE CO          DT     $39.00   Kitsap Co, WA

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to



200404290235
Page: 6 of 28
04/29/2004 02:18P
LAND TITLE CO          DT     $39.00 Kitsap Co, WA

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.



**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

LAND TITLE CO

200404290235
Page:    8 of 20
04/29/2004  02:18P
DT      $39.00  Kitsap Co, WA

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.



200404290235
Page: 9 of 20
04/29/2004 02:10P
Kitsap Co, WA

LAND TITLE CO          DT      $39.00

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's



200404290235
Page:  10 of 28
04/29/2004  02:16P
LAND TITLE CO        DT      $39.00  Kitsap Co, WA

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)



200404290235
Page:  11 of 20
04/29/2004 02:16P
LAND TITLE CO   DT   $39.00 Kitsap Co, WA

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

VMP-6A(WA) (0012)                    Page 12 of 15                    Form 3048  1/01



release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.



200404290235
Page:   13 of 20
04/29/2004  02:16P
LAND TITLE CO          DT      $39.00  Kitsap Co, WA

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____(Seal)     _____(Seal)
JAY L. LAMB                 -Borrower     SHARI D. HULTBERG           -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                 -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                 -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                 -Borrower

VMP-6A(WA) (0012)              Page 14 of 15                    Form 3048  1/01

200404290235
Page:  14 of 20
04/29/2004  02:18P
LAND TITLE CO        DT    $39.00  Kitsap Co, WA

STATE OF WASHINGTON
County of Kitsap                                                     } ss:
     On this day personally appeared before me
JAY L. LAMB AND SHARI D. HULTBERG

to me known to be the individual(s) described in and who executed the within and foregoing instrument,
and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the
uses and purposes therein mentioned.
     GIVEN under my hand and official seal this 27ᵀᴴ    day of  Apᵣᵢₗ ᴅᵒₒᵤ .



MEG REEVES
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
OCTOBER 25, 2006

_Meg Reeves_
Notary Public in and for the State of Washington, residing at
Poulsbo
My Appointment Expires on 10/25/06

200404290235
Page:  15 of 20
04/29/2004  02:10P
LAND TITLE CO        DT    $39.00   Kitsap Co, WA

Unofficial Copy

EXHIBIT 'A'

DESCRIPTION:

LOT 2, LARGE LOT SUBDIVISION NO. 197, RECORDED IN VOLUME 1 OF LARGE LOTS, PAGE 233, UNDER AUDITOR'S FILE NOS. 3113952 AND 3113953, BEING A PORTION OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 21, TOWNSHIP 23 NORTH, RANGE 2 EAST, W.M., IN KITSAP COUNTY, WASHINGTON; EXCEPT ORCHARD AVENUE, COUNTY ROAD.

Unofficial Copy



200404290235
Page: 16 of 20
04/29/2004 02:10P
LAND TITLE CO        DT    $39.00  Kitsap Co, WA

Assessor's Parcel Number:
21230210372007
After Recording Return To:
PLAZA HOME MORTGAGE, INC.

5030 SHOREHAM PLACE #109
SAN DIEGO, CA 92122

Prepared By:

PLAZA HOME MORTGAGE, INC.
5090 SHOREHAM PLACE #109
SAN DIEGO, CA 92122
(858) 346-1200

───────────[Space Above This Line For Recording Data]───────────

# FIXED/ADJUSTABLE RATE RIDER
## LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

LOAN NO.:   09403213

MIN: 100109800000009549
MERS Phone: 1-888-679-6377

THIS FIXED/ADJUSTABLE RATE RIDER is made this   23rd day of          APRIL, 2004          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
PLAZA HOME MORTGAGE, INC.
("Lender") of the same date and covering the property described in the Security Instrument and located at:

8625 ORCHARD AVENUE SOUTHEAST, PORT ORCHARD, WA  98367.

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN
ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S
ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM
RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
        The Note provides for an initial fixed interest rate of     4.875     % . The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266  (0309)                          Page 1 of 4          LENDER SUPPORT SYSTEMS, INC. COU-4266.COU (01/04)



200404290235
Page:  17 of 28
04/29/2004  02:19P
LAND TITLE CO        DT    $39.00 Kitsap Co, WA

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MAY, 2009          , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO  AND ONE QUARTER                                percentage points (       2.250       %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  9.875  % or less than   2.250    %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than  9.875   %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

FE-4266  (0309)                                    Page 2 of 4

LAND TITLE CO
DT      $39.00
200404290235
Page:   18 of 28
04/29/2004   02:18P
Kitsap Co, WA

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an

FE-4266 (0309)                                   Page 3 of 4



assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
JAY L. LAMB                -Borrower

_____ (Seal)
SHARI D. HULTBERG          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

FE-4266 (0309)                    Page 4 of 4

LAND TITLE CO          DT    $39.00

200404290235
Page:   20 of 20
04/29/2004  02:10P
Kitsap Co, WA

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

**AND WHEN RECORDED MAIL TO:**
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

LAND TITLE    200904010085
Appointment of Trustee Rec Fee: $ 14.00
04/01/2009 12:52 PM
Walter Washington, Kitsap Co Auditor
Page: 1 of 1

E-229753

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No.: 7437854391                          T.S. #: WA-178655-C

### APPOINTMENT OF SUCCESSOR TRUSTEE

**NOTICE IS HEREBY GIVEN** that CHICAGO TITLE INSURANCE COMPANY LSI DIVISION, a corporation formed under RCW 61.24, whose address is 1111 Main St., #200 Vancouver, WA 98660 is appointed successor trustee under that certain deed of trust in which JAY L. LAMB, AN UNMARRIED MAN, AND SHARI D. HULTBERG, AN UNMARRIED WOMAN, EACH AS THEIR SEPARATE ESTATE is the Grantor, and LAND TITLE COMPANY OF KITSAP COUNTY is the Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR PLAZA HOME MORTGAGE, INC is the Beneficiary under that Trust Deed dated 4/23/2004, and recorded on 4/29/2004, under Auditor's File No. 200404290235 as book and page of the Records of Kitsap County, Washington, it to have all the powers of said original trustee, effective forthwith.

IN WITNESS WHEREOF, the undersigned Beneficiary has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.
Dated: 3/27/2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

DONNA FITTON, ASSISTANT SECRETARY

State of California ) ss.
County of Los Angeles )

On 3/27/2009 before me, Dee C. Ortega Notary Public, personally appeared Donna Fitton personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

# EXHIBIT "D" ATTACHED

# (HEREUNDER)

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Plaza Home Mortgage, Inc.

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

FIRST AMERICAN TITLE INS     200911230099
Assign Of Deed Trust Rec Fee: $ 14.00
11/23/2009 11:31 AM                     Page: 1 of 1
Walter Washington, Kitsap Co Auditor

APN: 21230210372007

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

4317977

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2004RS6 all beneficial interest under that certain Deed of Trust dated April 23, 2004, executed by Jay L. Lamb, an Unmarried man, and Shari D. Hultberg, an Unmarried woman, each as their separate estate, to Land Title Company of Kitsap County as trustee, for Mortgage Electronic Registration Systems, Inc., solely as nominee for Plaza Home Mortgage, Inc., as beneficiary, and recorded as Instrument No. 200404290235 on April 29, 2004, in the State of Washington, Kitsap County Recorder's Office. Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated:  10/28/09                Mortgage Electronic Registration Systems, Inc., solely
                                as nominee for Plaza Home Mortgage, Inc.
                                By:
                                Its:  Sandy Braughton / Asst Secretary

State of Pennsylvania      )
                           ) ss.
County of Montgomery       )
On      10/28/09      before me,  Zahirah Y Sweet,     personally  appeared
Sandy Braughton    who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of  PA      that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Notary Public                                    (This Area for Official Notary Seal)

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

# EXHIBIT "E" ATTACHED

# (HEREUNDER)



AND WHEN RECORDED MAIL TO:

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

(818) 260-1600

E. 229753

Loan No: **7437854391** APN: 212302-1-037-2007

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: **WA-178855-C**

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.      NOTICE IS HEREBY GIVEN that CHICAGO TITLE INSURANCE COMPANY LSI DIVISION, the
undersigned Trustee will on **8/7/2009**, at **10:00 AM  at  Front steps to Kitsap County Courthouse, 614
Division Street, Port Orchard, Washington** sell at public auction to the highest and best bidder,
payable, in the form of cash, or cashier's check or certified checks from federally or State chartered
banks,  at the time of sale the following described real property, situated in the County of  Kitsap, State of
Washington, to-wit:

LOT 2, LARGE LOT SUBDIVISION NO. 197, RECORDED IN VOLUME 1 OF LARGE LOTS, PAGE
233, UNDER AUDITOR'S FILE NOS. 3113952 AND 3113953, BEING A PORTION OF THE SOUTH
HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 21,
TOWNSHIP 23 NORTH, RANGE 2 EAST, W.M., IN KITSAP COUNTY, WASHINGTON; EXCEPT
ORCHARD AVENUE, COUNTY ROAD.

Commonly known as:
8625 ORCHARD AVENUE SOUTHEAST
PORT ORCHARD, WASHINGTON 98367

which is subject to that certain Deed of Trust dated 4/23/2004, recorded  4/29/2004, under Auditor's File
No. 200404290236, in Book , Page  records of Kitsap County, Washington, from JAY L. LAMB, AN
UNMARRIED MAN, AND SHARI D. HULTBERG, AN UNMARRIED WOMAN, EACH AS THEIR
SEPARATE ESTATE, as Grantor(s), to LAND TITLE COMPANY OF KITSAP COUNTY, as Trustee, to
secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY
AS NOMINEE FOR PLAZA HOME MORTGAGE, INC, as Beneficiary, the beneficial interest in which was
assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE
FOR PLAZA HOME MORTGAGE, INC to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

II.     No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of
the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by
the Deed of Trust/Mortgage.

Loan No: 7437854391                         T.S. No.: WA-178655-C

III.     The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears:

**PAYMENT INFORMATION**

| FROM | THRU | NO.PMT | AMOUNT | TOTAL |
|---|---|---|---|---|
| 1/1/2009 | 4/30/2009 | 4 | $1,396.68 | $5,586.72 |

**LATE CHARGE INFORMATION**

| FROM | THRU | NO. LATE CHARGES | | TOTAL |
|---|---|---|---|---|
| 1/1/2009 | 4/30/2009 | 4 | | $202.72 |

**PROMISSORY NOTE INFORMATION**

| | |
|---|---|
| Note Dated: | 4/23/2004 |
| Note Amount: | $249,600.00 |
| Interest Paid To: | 12/1/2008 |
| Next Due Date: | 1/1/2009 |

IV.     The amount to cure defaulted payments as of the date of this notice is $10,102.02. Payments and late charges may continue to accrue and additional advances to your loan may be made, it is necessary to contact the beneficiary prior to the time you tender the reinstatement amount so that you may be advised of the exact amount you would be required to pay.

As of the dated date of this document the required amount to payoff the obligation secured by the Deed of Trust is: $259,064.13 (note: due to interest, late charges and other charges that may vary after the date of this notice, the amount due for actual loan payoff may be greater).

The principal sum of $249,549.30, together with interest as provided in the Note from the 1/1/2009, and such other costs and fees as are provided by statute.

V.     The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on  8/7/2009. The defaults referred to in Paragraph III must be cured by 7/27/2009, (11) days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before  7/27/2009 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank. The sale may be terminated any time after the  7/27/2009 (11 days before the sale date) and before the sale, by the  Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.     A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

| NAME | ADDRESS |
|---|---|
| JAY L. LAMB, AN UNMARRIED MAN, AND SHARI D. HULTBERG, AN UNMARRIED WOMAN, EACH AS THEIR SEPARATE ESTATE | 8625 ORCHARD AVENUE SOUTHEAST PORT ORCHARD, WASHINGTON 98367 |
| JAY L. LAMB AND SHARI D. HULTBERG | PO BOX 163 OLALLA, WA 98359-0163 |

UNOFFICIAL COPY

by both first class and certified mail on 3/30/2009, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.



Loan No: 7437854391                         T.S. No.: WA-178655-C

VII.     The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

IX.     Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.      NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants.  After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

DATED: 4/30/2009

CHICAGO TITLE INSURANCE COMPANY LSI DIVISION
1111 Main St., #200
Vancouver, WA  98660
Sale Line::  714-730-2727

**Gina Avila**
**Authorized Signatory**

State of California        ) ss.
County of Los Angeles)

On 4/30/2009, before me, Dee C. Ortega, a Notary personally appeared Gina Avila who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
               Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

# EXHIBIT "F" ATTACHED

# (HEREUNDER)

AND WHEN RECORDED TO:
**GMAC MORTGAGE, LLC FKA**
**GMAC MORTGAGE CORPORATION**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON, PA 19034**

```
LAND TITLE    200912140055
Deed Rec Fee: $ 63.00
12/14/2009 09:17 AM
Walter Washington, Kitsap Co Auditor
```
Page: 1 of 2

T.S. No. **WA-178655-C**
Loan No. **7437854391**
Order No. **090224454-WA-GNO**

E-229753

A SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TRUSTEE'S DEED

The GRANTOR, LSI Title Agency, Inc fdba Chicago Title Insurance Company (LSI Division), as present Trustee under that Deed of Trust, as hereinafter particularly described, in consideration of the premises and payment recited below, hereby grants and conveys, without warranty, to: **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for RAMP 2004RS6** , GRANTEE, that real property, situated in the County of Kitsap, State of Washington, described as follows: **LOT 2, LARGE LOT SUBDIVISION NO. 197, RECORDED IN VOLUME 1 OF LARGE LOTS, PAGE 233, UNDER AUDITOR'S FILE NOS. 3113952 AND 3113953, BEING A PORTION OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 21, TOWNSHIP 23 NORTH, RANGE 2 EAST, W.M., IN KITSAP COUNTY, WASHINGTON; EXCEPT ORCHARD AVENUE, COUNTY ROAD. APN No. 212302-1-037-2007**
RECITALS:

NTS: 200905070209

1. This conveyance is made pursuant to the powers, including the power of sale, conferred upon said Trustee by that certain Deed of Trust between JAY L. LAMB, AN UNMARRIED MAN, AND SHARI D. HULTBERG, AN UNMARRIED WOMAN, EACH AS THEIR SEPARATE ESTATE, as Grantor, to LAND TITLE COMPANY OF KITSAP COUNTY, as Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR PLAZA HOME MORTGAGE, INC, as Beneficiary, dated 4/23/2004, recorded 4/29/2004, as Instrument No. 200404290235, in Book/Reel, Page/Frame , records of Kitsap County, Washington.

2. Said Deed of Trust was executed to secure, together with other undertakings, the payment of one promissory note in the sum of $249,600.00 with interest thereon, according to the terms thereof, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR PLAZA HOME MORTGAGE, INC and to secure any other sums of money which might become due and payable under the terms of said Deed of Trust.

3. The described Deed of Trust provides that the real property conveyed therein is not used principally for agricultural or farming purposes.

4. Default having occurred in the obligations secured and/or covenants of the Grantor, as set forth in Notice of Trustee's Sale described below, which by the terms of the Deed of Trust make operative the power to sell, the thirty-day advance Notice of Default was transmitted to the Grantor, or his successor in interest, and a copy of said Notice was posted or served in accordance with law.

5. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., being then the holder of the indebtedness secured by said Deed of Trust, delivered to said Trustee a written request directing said Trustee or his authorized agent to sell the described property in accordance with law and the terms of said Deed of Trust. KITSAP COUNTY TREASURER EXCISE          12/14/2009

## 2009EX06843

Total: $10.00          Clerk's Initial _____

**TRUSTEE'S DEED**

T.S. No. **WA-178655-C**
Loan No. **7437854391**

6.    The defaults specified in the "Notice of Default" not having been cured, the Trustee, in compliance with the terms of said Deed of Trust, executed and on **5/7/2009**, recorded in the office of the Auditor of **Kitsap** County, Washington, a "Notice of Trustee's Sale" of said property as Auditor's File No. **200905070209**

7.    The Trustee, in its aforesaid "Notice of Trustee's Sale," fixed the place of sale as   Front steps to Kitsap County Courthouse, 614 Division Street, Port Orchard, Washington, a public place, on 8/7/2009 at 10:00 AM, and in accordance with law caused copies of the statutory "Notice of Trustee's Sale" to be transmitted by mail to all persons entitled thereto and either posted or served prior to 90 days before the sale; further, the Trustee caused a copy of said "Notice of Trustee's Sale" to be published once between the thirty-fifth and twenty-eighth day before the date of sale, and once between the fourteenth and seventh day before the date of sale in a legal newspaper in each county in which the property or any part thereof is situated: and further, included in this Notice, which was transmitted to or served upon the Grantor or his successor in interest, a "Notice of Foreclosure" in substantially the statutory form.

8.    During foreclosure no action was pending on an obligation secured by said Deed of Trust.

9.    All legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in Chapter 61.24 RCW.

10    The defaults specified in the "Notice of Trustee's Sale" not having been cured eleven days prior
.     to the date of Trustee's Sale and said obligation secured by said Deed of Trust remaining unpaid, on **11/20/2009**, the date of sale, which was not less than 190 days from the date of default in the obligation secured, the Trustee then and there sold at public auction to said Grantee, the highest bidder therefore, the property hereinabove described, for the sum of **$175,445.66**, by the satisfaction in full of the obligation then secured by said Deed of Trust, together with all fees, costs and expenses as provided by statute.

Date:  12/8/2009                            **LSI Title Agency, Inc fdba Chicago Title**
                                           **Insurance Company (LSI Division)**

                                           _Sherrie Truitt Morris_, A.V.P.

State of _Ca_   )
                ) ss.
County of _Orange_ )

On _12-9-09_ before me, _David Mathias_, a Notary Public personally appeared, _Sherrie Truitt Morris_ who proved to me on the basis of satisfactory evidence to the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

SIGNATURE _David Mathias_

**David Mathias**

DAVID MATHIAS
Commission # 1769151
Notary Public - California
Orange County
My Comm. Expires Sep 18, 2011